UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. SHEMANSKI,          Civil Action No.: 18-11535
                                Honorable Gershwin A. Drain
                 Plaintiff      Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 16, 21]**

Plaintiff Michael J. Shemanski, proceeding *pro se*, appeals the final

decision of defendant Commissioner of Social Security (Commissioner),

which denied his application for disability insurance benefits (DIB) under

the Social Security Act.  Both parties have filed summary judgment

motions, referred to this Court for a report and recommendation under 28

U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the

administrative law judge's (ALJ) decision is supported by substantial

evidence and thus **RECOMMENDS** that:

- Shemanski's motion [ECF No. 16] be **DENIED**;

- the Commissioner's motion [ECF No. 21] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under to sentence four and sentence six of 42 U.S.C. § 405(g).

## I.     BACKGROUND

### A.     Shemanski's Background and Disability Application

Born May 30, 1973, Shemanski was 40 years old on the alleged disability onset date of April 15, 2014.  [ECF No. 14-2, Tr. 29].  He has past relevant work as a truck driver, dump truck driver, roll-off truck driver and construction worker.  [*Id.*].  Shemanski claims disability due to herniated and bulging discs in his neck and back.  [ECF No. 14-3, Tr. 65].

After a hearing in March 2017, during which Shemanski and a vocational expert (VE) testified, the ALJ found that Shemanski was not disabled.  [ECF No. 14-2, Tr. 14-64].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-6].  Shemanski timely filed for judicial review.  [ECF No. 1].

### B.     The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

Applying this framework, the ALJ concluded that Shemanski was not disabled.  At the first step, she found that Shemanski had not engaged in substantial gainful activity during the relevant period—the alleged onset date of April 15, 2014, through the date of the decision.  [ECF No. 14-2, Tr. 18].  At the second step, she found that Shemanski had the severe impairments of degenerative disc disease of the cervical and lumbar spine status post cervical fusion; status post cervical sprain and whiplash injury; and obesity.  [*Id.*].  Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, Tr. 19-20].

Between the third and fourth steps, the ALJ found that Shemanski had the RFC to perform light work,[2] except that:

> [he] can lift and/or carry up to ten pounds frequently and up to 20 pounds occasionally.  [He] can stand and/or walk for up to six hours and sit for up to six hours in an eight-hour workday.  [He] can frequently climb ramps and stairs, balance, stoop, kneel, and crouch; can occasionally crawl; and can never climb ladders, ropes or scaffolds.  He can make frequent, but not constant, up or down neck movements and can make occasional neck rotations in the direction of the left or right sides. [He] can never be exposed to excessive vibration, dangerous machinery, or hazardous heights.

---

[2] The regulations define light work as lifting up to 20 pounds, with frequent lifting or carrying of objects weighing up to 10 pounds. Light work requires standing up to six hours of an eight-hour workday.  Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).
.

[*Id.*, Tr. 20].  At step four, the ALJ found that Shemanski could not perform his past relevant work as a truck driver, dump truck driver, roll-off truck driver or construction worker.  [*Id.*, Tr. 29].  But after considering Shemanski's age, education, work experience, RFC and the testimony of the VE, the ALJ found that he was not disabled because there were other jobs in significant numbers that he could perform, including machine tender, assembler and packager.  [*Id.*, Tr. 30].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Shemanski asserts that he cannot work because he lacks full movement of his neck and back, cannot lift anything more than ten pounds, cannot sit or stand more than 30 minutes or raise his arms over his head. [ECF No. 16].  The Commissioner counters that the ALJ's conclusions are supported by substantial evidence.  [ECF No. 21].  As Shemanski is proceeding *pro se*, the Court will consider his arguments as well as any obvious errors by the ALJ.  *See Brinkley v. Comm'r of Soc. Sec.*, 2015 WL 1637598, at *2-3 (E.D. Mich. Apr. 13, 2015) (court may review administrative record for obvious errors when Social Security plaintiff is *pro se*).

## A.

The Court finds that the ALJ sufficiently considered Shemanski's symptoms and limitations from his neck and back injuries.  Those injuries stem from an April 2014 car accident.  Shemanski presented at the emergency department complaining of pain in his neck, right shoulder, back and headache. [ECF No. 14-8, Tr. 285].  He tried to return to work as a truck driver after the accident, but the pain was too severe. [ECF No. 14-6, Tr. 225].

An April 2014 CT scan showed mild degenerative disc disease at C5-6. [ECF No. 14-8, Tr. 288].  A July 2014 MRI revealed a herniated C5-6

6

disc with left impingement of the thecal sac and neural foramina compromise, as well as bulging C4-5 causing mild impingement of the thecal sac and neural foramina on the right. [*Id.*, Tr. 297].  Shemanski complained of constant pain on the right side of his neck and low back that radiated to his right leg.  [*Id.*, Tr. 311].  Neither physical therapy or medication controlled his pain.  [*Id.*].  He had diminished reflexes and sensation in his arms and legs, positive Spurling's maneuver, a positive straight leg raise test, paraspinal tenderness and muscle spasms. [*Id.*, Tr. 312].  A cervical epidural steroid injection failed to relieve his pain. [*Id.*, Tr. 417, 426].

In October 2014, Shemanski's neck pain and upper extremity numbness worsened, and another MRI revealed severe left neural foramina stenosis at C5-6 due to uncinate process hypertrophy, mild C5-6 spinal stenosis because of a left paracentral disc osteophyte complex, a small C4-5 herniated nucleus pulposus, and mild right neural foramina stenosis due to uncinate process hypertrophy at C4-5. [*Id.*, Tr. 295].  He underwent an anterior cervical discectomy and fusion of the C4-5 and C5-6. [*Id.*, Tr. 430-32]. The surgery resolved the numbness in his left hand and reduced his neck pain. [*Id.*, Tr. 433, 436, 439, 445, 484, 487, 490]. He had 4/5 or 5/5 strength in the neck, upper extremities and back, and only mildly

restricted range of motion. [*Id.*, Tr. 450-51, 485, 488, 491].  Shemanski

continued with conservative treatment for his continued right-side

symptomology, specifically steroid injections and over-the-counter anti-

inflammatories.  [*Id.,* Tr. 450-51]. No further surgical intervention was

recommended.  [*Id.*].  By 2016, Shemanski believed his back, rather than

his neck, was the problem limiting his functionality. [*Id.*, Tr. 484, 487, 490].

Relating to Shemanski's lower back complaints, he had tenderness at

L2 and L3 and a positive spring test in the upper lumbar spine in

September 2014. [*Id.*, Tr. 519].  He had lumbar spine tenderness at L5 in

October 2014. [*Id.,* Tr. 304].  He had negative bilateral leg raise tests in

November 2014. [*Id.,* Tr. 400, 427].

In August 2016, Shemanski had negative bilateral straight leg raises,

negative stork testing, negative SI compression and negative SI discretion.

[*Id.*, Tr. 477]. In October 2016, at the end of a course of physical therapy,

he had normal range of motion, his right lower extremity strength ranged

from 4+ to 5-/5, and left side strength was 5/5. [*Id.,* Tr. 468].

Shemanski began treating with a physical medicine specialist, Daniel

Duffy, D.O., in August 2016.  Dr. Duffy completed a treatment source

statement in which he said that Shemanski could lift and carry up to ten

pounds continuously, up to 20 pounds rarely, and never more than 20

pounds. [*Id.*, Tr. 481].  Dr. Duffy marked that he could sit, stand and walk, respectively, only one hour out of an eight-hour workday, but he noted that this assessment was based on Shemanski's "self-report." [*Id.*]. The statement also said that he could frequently handle, finger, push and pull with both upper extremities, and rarely reach (including overhead) or feel. [*Id.*, Tr. 482]. Dr. Duffy opined that Shemanski could occasionally climb stairs and ramps, rarely kneel and rotate his head and neck, and never crouch, stoop or crawl. [*Id.*, Tr. 482-83].

In August 2014, independent medical examiner Carol Van Der Harst, M.D., examined Shemanski at the behest of the no-fault automobile insurer.  Dr. Van Der Harst reported that he should be limited to lifting and carrying 25 pounds or less, only intermittent handling and that reaching over his head, repetitive head movement and twisting of neck and lumbar spine should be avoided. She also recommended a sit/stand option. [*Id.*, Tr. 522].

## B.

The ALJ recognized Shemanski's cervical and lumbar degenerative disc disease as severe impairments requiring restrictions.  [ECF No. 14-2, Tr. 18-20].   The ALJ concluded that the medical evidence and Shemanski's described daily activities supported a finding that Shemanski

could only perform work at the light exertional level, with the further limitations described in the RFC. [*Id.*]. But the ALJ did not find all of Shemanski's allegations about the limiting effects of his physical impairment to be supported by the record. Citing Shemanski's described daily activities, which were less limiting than expected given his complaints of disabling symptoms; the successful cervical discectomy and fusion surgery, which improved his symptoms and functionality; and his treating physician's assessment that further surgery was unnecessary, the ALJ found no reasonable indication in the medical evidence or elsewhere in the record to support any additional or more restrictive limitations than he assigned in the RFC. [*Id.*, Tr. 28].

Shemanski argues that he requires greater limitations than those provided in the RFC, but he fails to satisfy his burden of proving the need for greater restrictions. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir, 2008). Nothing in the record, not even Dr. Duffy's statement, suggests that he can never lift more than ten pounds or reach overhead. [ECF No. 14-8, Tr. 481].

Dr. Duffy did opine that Shemanski could rarely rotate his head and neck, reach or reach overhead, but the ALJ gave Dr. Duffy's opinion little weight. [ECF No. 14-2, Tr. 26-28]. Although the ALJ adopted many of Dr.

10

Duffy's opinions on limitations in the RFC, she discounted the remainder of his opinions, including those relating to rotating Shemanski's head and neck, reaching overhead and his ability to sit, stand and walk.  [*Id.*]. Ordinarily, the "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  Here, the ALJ reasoned that Dr. Duffy's opinion was not well-supported and was inconsistent with the medical evidence, including Dr. Duffy's own treatment notes.  [ECF No. 14-2, Tr. 26-27].

The ALJ imposed less restrictive head and neck rotation limitations (occasional, as opposed to rarely) based on Dr. Duffy's treatment notes that reflected 4/5 strength, only mildly restricted range of motion, normal muscle tone and no joint instability in his neck. [ECF No. 14-8, Tr. 485, 488, 491].  She also did not adopt Dr. Duffy's reach restrictions because records from Dr. Duffy and treating neurosurgeon Naman Salibi, M.D., showed 4/5 or 5/5 strength and only mild restrictions in range of motion in Shemanski's upper extremities, as well as resolution of left-side and improvement in right-side upper extremity radiculopathy. [ECF No. 14-2, Tr. 23, ECF No.

11

14-8, Tr. 450-52, 485, 488, 491].  Finally, the ALJ did not adopt Dr. Duffy's

sit, stand or walk restrictions because they were specifically noted to be

based on Shemanski's "self-report." [ECF No. 14-2, Tr. 27].  She also noted

that Dr. Duffy's discounted opinions were inconsistent with Shemanski's

described daily activities, such as driving his pickup truck to Northern

Michigan and repeatedly driving from Saginaw to Detroit to visit his father in

the hospital.  [*Id.*, Tr. 24-26].

In sum, substantial evidence in the record supports the ALJ's RFC.

"If the Secretary's decision is supported by substantial evidence, it must be

affirmed even if the reviewing court would decide the matter differently, and

even if substantial evidence also supports the opposite conclusion." *Cutlip*

*v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)

(citations and internal quotation marks omitted).

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Shemanski's motion [ECF No. 16] be **DENIED**; that the Commissioner's

motion [ECF No. 21] be **GRANTED**; and that the ALJ's decision be

**AFFIRMED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: June 6, 2019                           United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

14

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 6, 2019.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager